GRANT G. SIMMONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1891. Promulgated December 15, 1944.

*Frederick F. Rehberger, Esq.*, and *James B. Burke, Esq.*, for the petitioner.

*Laurence F. Casey, Esq.*, for the respondent.

482

484

OPINION.

ARUNDELL, *Judge*: The respondent denied the petitioner a bad debt deduction on the ground that Fishers Island Corporation's liability to repay was contingent upon the existence of designated funds and that, since such funds were never available for the purpose of repayment, a deductible debt never existed. We do not believe that argument is tenable, in view of the circumstances herein. The subscription agreement was entered into by the petitioner in the light of a plan for the reorganization and recapitalization of the corporation. It was agreed that the existing creditors of the corporation would extend or subordinate the obligations held by them, and it was reasonably hoped that during such time the corporation could dispose of sufficient of its realty to pay its obligations. The secured creditor was to be repaid from the first money received from the sale of the property which secured that loan. The parties contemplated that the subscribers and the banks would be repaid equally from the

sale proceeds over and above the amount necessary to satisfy the mortgagee, and from the first net earnings of the corporation and any balance which might be left in the interest and tax reserve fund. The parties must have been aware that the plan of repayment might not be successful. If it had been their intention that the petitioner was to be repaid only in the event the plan succeeded and that no obligation to repay would arise if the plan failed, the parties would certainly have made specific provision in the agreement for such an eventuality. The problem is not unlike that presented to the Court of Claims in *Birdsboro Steel Foundry & Machine Co.* v. *United States*, 3 Fed. Supp. 640.

The language in the agreement stating the sources from which funds would be available for repayment was not intended to limit, nor does it have the effect of limiting, the general liability of the corporation to repay. The language, it seems to us, is in the nature of a security provision describing the manner in which the parties anticipated that the loan would be repaid and indicating that certain funds would be held for that purpose, and was not a condition upon which the general liability of the corporation was contingent. This view finds support from the action of the referee in bankruptcy in allowing the claim of Samuel A. Salvage, who, as a subscriber, contested a motion to expunge his claim and succeeded in obtaining his pro rata share in the distribution to the unsecured creditors. The parties at all times regarded their relationship as that of debtor and creditor, and we think the obligation to repay petitioner was absolute.

What we have just said disposes of respondent's alternative argument that the subscription agreement was in the nature of an investment rather than a loan. It seems clear that the shares received by the subscribers were in lieu of interest and to give them a control of the corporation in order that the repayment of the loan might be better assured. There is no warrant for allocating any portion of the $10,000 to the shares acquired.

To establish the value at the end of 1939, petitioner introduced a balance sheet which reflected assets considerably in excess of liabilities. From this and other evidence, we have concluded that the company had valuable assets to which a creditor standing in petitioner's position might look. Further, the major obligations of the corporation, including that to petitioner, in accordance with the terms of the plan, did not mature until January 1, 1940.

The identifiable event signifying the loss by petitioner and indicating the probable amount thereof was the order of the Federal District Court on November 25, 1940, directing the sale of the bankrupt's principal assets for the sum of $25,000 over and above the claim of the secured creditors.

It was thus apparent at the end of 1940 that petitioner's claim would in no event be paid in its entirety. At best, he could hope to recover only a very small percentage of the sum loaned. The right to a partial charge-off was thus established. But at the end of 1940 petitioner's claim had not been expunged by the referee and it was not until October of the following year that the referee disallowed the claim on motion of the trustee. Salvage, who persisted in his claim, received a dividend of 8.73 percent and petitioner would have received substantially the same dividend if he had pursued his remedy. In the circumstances the deduction is allowable in 1940 to the extent of 91.27 percent of its face amount as a partial bad debt.

*Decision will be entered under Rule 50.*